Filed 1/17/23 In re C.M. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re C.M., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>T.G.,<br><br>    Defendant and Appellant. | G061573<br><br>(Super. Ct. No. 20DP1629)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Daphne Grace Sykes, Judge. Conditionally reversed and remanded with directions.

Anna Rak, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, and Karen L. Christensen, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minor.

T.G. (Mother) appeals from the order terminating parental rights to her child C.M. (the child) and placing her for adoption. (Welf. & Inst. Code, § 366.26.)[1] Mother contends the order must be reversed because the Orange County Social Services Agency (the Agency) and the juvenile court failed to comply with their respective inquiry duties under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) and related California law.[2] The Agency concedes it failed its duty of inquiry as required under ICWA and related California law and the matter must therefore be remanded. We agree.

We conditionally reverse the order terminating Mother's parental rights and remand for the limited purpose of ensuring compliance with ICWA and related state law. As explained further in the disposition, *post*, we direct the Agency and the juvenile court to satisfy their duties under ICWA and related California law within certain time periods, given the importance of expediency and need for finality at this stage of the proceedings. After the Agency has satisfied its duties, if the juvenile court finds ICWA does not apply to the proceedings involving the child, then the order terminating parental rights and placing the child for adoption shall be reinstated.

SUMMARY OF FACTS AND PROCEDURAL HISTORY[3]

In December 2020, the child was taken into protective custody after Mother tested positive for methamphetamine and amphetamine shortly after the child was born.

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] Because ICWA and section 224.2 use the term "Indian," we will do the same for consistency. We recognize, however, that other terms, such as "Native American" or "indigenous," are preferred by many. (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

[3] Our summary of facts and procedural history is limited to provide context relevant to the single issue presented in this appeal.

The Agency filed a juvenile dependency petition alleging the child came within section 300, subdivisions (b)(1) (failure to protect) and (j) (abuse of sibling).

At the detention hearing the following month, Mother's counsel stated: "Mother does have some Native American ancestry. It's the Yaqui tribe in Arizona, so I do think that an ICWA inquiry would be prudent at this time." At the same hearing, the child's alleged father N.Y. (Father)[4] denied having any Native American heritage in his family background. The juvenile court stated it would defer making ICWA findings at that time, "as Mother indicated she may have some Native American heritage," and ordered the Agency "to follow up, notifying the Bureau of Indian Affairs if appropriate."

The Agency's jurisdiction/disposition report stated that on January 21, 2021, Father denied Native American ancestry to a social worker during an interview. That report also stated Mother was not "interviewed as to ICWA" because "she has not made herself available to the Agency."

At the jurisdiction hearing in April 2021, Mother pleaded nolo contendere to the allegations of the petition, as amended by interlineation, and Father submitted. The court found the allegations of the amended petition true by a preponderance of the evidence, bringing the child within section 300, subdivisions (b)(1) and (j).

At the disposition hearing in June 2021, the juvenile court declared the child a dependent child of the Orange County Juvenile Court under section 360, subdivision (d), and vested custody of the child with the Agency. The court approved a case plan and a visitation plan and found by clear and convincing evidence under section 361.5, subdivision (b)(11) that reunification services need not be provided to Mother.

In a December 2021 status review report, the Agency stated the court had previously made an order on January 4, 2021 that "Mother and Father [have] completed

---

[4] Father is not a party to this appeal.

3

and filed a Parental Notification of Indian Status (ICWA-020)" and the court's ICWA finding had been deferred. (Our record does not include any completed ICWA-020 form but does include a declaration of the superior court clerk stating that no ICWA-020 form dated January 4, 2021 or any ICWA-030 form was filed on behalf of Mother in this case.) The same status report reiterated that on January 4, 2021, a social worker reported both Mother and Father denied Native American ancestry.

In the permanency hearing report dated April 6, 2022, the Agency reiterated the statements regarding ICWA contained in the previously filed jurisdiction/disposition report and December 2021 status review report. Noting the juvenile court had not yet made a finding regarding ICWA, the permanency hearing report states: "Based upon the available information presented in this report, it is respectfully recommended that the Court find that ICWA does not apply."

In a second addendum report dated June 21, 2022, the assigned social worker stated: "On June 14, 2022, the undersigned attempted to contact [Mother] and [Father] to inquire about their ICWA status. The calls went to voicemail. The undersigned left voicemails to each parent asking them to return his phone call in order to discuss ICWA. [¶] At the time of writing this report, the undersigned had not received a call back from the parents."

At the permanency hearing, the juvenile court found ICWA did not apply. The court ordered Mother's and Father's parental rights terminated and placed the child for adoption. Mother appealed.

DISCUSSION

I.

ICWA INQUIRY AND NOTICE REQUIREMENTS

"'ICWA is a federal law giving Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a

4

reservation. [Citations.] Congress enacted ICWA to further the federal policy "'that, where possible, an Indian child should remain in the Indian community . . . .'"' [Citation.]" (*In re A.R.* (2022) 77 Cal.App.5th 197, 203.) "ICWA and governing federal regulations [citation] set minimal procedural protections for state courts to follow before removing Indian children and placing them in foster care or adoptive homes. [Citation.]" (*In re Rylei S.* (2022) 81 Cal.App.5th 309, 316.)

The California Legislature has imposed an affirmative and continuing duty of inquiry on both the Agency and the juvenile court. (§ 224.2, subds. (a), (c); *In re Y.W.* (2021) 70 Cal.App.5th 542, 552.) When a child protective agency takes a child into temporary custody, it initially "has a duty to inquire whether that child is an Indian child." (§ 224.2, subd. (b).) This "[i]nquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, [and] others who have an interest in the child . . . whether the child is, or may be, an Indian child . . . ." (*Ibid.*) At each parent's first court appearance, the court must (1) ask whether the parent "knows or has reason to know the child is an Indian child" (*id.*, subd. (c)) and (2) order each parent to complete the Parental Notification of Indian Status form (Cal. Rules of Court, rule 5.481(a)(2)(C)).

"A family member's belief that a child may have Indian ancestry or heritage must be investigated. The duty to inquire 'obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child.' [Citations.] The agency's duty to inquire expressly includes asking 'extended family members' whether they know or have reason to know that the child is an Indian child. [Citation.]" (*In re G.H.* (2022) 84 Cal.App.5th 15, 29-30.)

If either the juvenile court or the Agency "has reason to believe that an Indian child is involved in a proceeding," then the court or the Agency must "make further inquiry regarding the possible Indian status of the child" as soon as possible. (§ 224.2, subd. (e).) If "there is reason to know" an Indian child is involved in the

5

proceeding (*id.*, subd. (f)), formal notice must be sent to the child's parents or legal guardian, Indian custodian, if any, and the child's tribe (§ 224.3, subd. (a)). "It is this 'notice requirement, which . . . enables a tribe to determine whether the child is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the proceeding.' [Citation.]" (*In re D.F.* (2020) 55 Cal.App.5th 558, 568.)

"[T]he juvenile court 'has a responsibility to ascertain that [the Agency] has conducted an adequate investigation'" (*In re D.F., supra*, 55 Cal.App.5th at p. 568) and must determine whether ICWA applies to the child's proceedings (*In re Y.W., supra*, 70 Cal.App.5th at p. 552). The court may conclude ICWA does not apply to the proceedings if it finds the Agency has satisfied its duty of inquiry and due diligence as required in section 224.2 and there is no reason to know the child is an Indian child. (§ 224.2, subd. (i)(2).)

## II.

### THE AGENCY AND THE JUVENILE COURT FAILED TO CONDUCT AN ADEQUATE INQUIRY

Mother contends the order terminating her parental rights must be conditionally reversed because the Agency and the juvenile court failed to satisfy their respective duties of inquiry under ICWA. In her opening brief, Mother argues: "While [Mother] specified that she may have Native American ancestry through the Yaqui tribe of Arizona at the detention hearing, the Agency never contacted the Bureau of Indian Affairs ('BIA'), any relevant tribes, and relatives who might have information about the child's tribe membership of eligibility as required once a tribe was named. [Citation.] It was not until the permanency hearing was pending that the Agency made efforts to reach out to [Mother] to follow up on her possible Indian ancestry. [Citation.] The Agency had contact with [Mother] at various stages throughout the case but did not ask her about ICWA on those occasions. [Citation.] The Agency never sought relatives to ask about possible Indian Ancestry or even asked [Mother] for any relatives who might have information. [Citation.] Likewise, after the initial inquiry at the detention hearing, the

6

court did not again inquire with [Mother] about ICWA when she was present for court hearings. [Citation.] Nor did the court ever ask [Mother] about any relatives who might have information regarding whether the child is or may be an Indian child. [Citation.]"

In its respondent's brief, the Agency "concedes that Mother is correct that further inquiry regarding ICWA was not conducted after it was reported that Mother had possible heritage in the Yaqui Tribe in Arizona. Further inquiry was not conducted as required." Specifically, the Agency "concedes that it did not ask anyone beyond the parents about Native American Indian heritage [notwithstanding the names of relatives listed in the detention report] and did not make further inquiry after Mother's claim of heritage." We accept the Agency's concession as the record shows the Agency and the juvenile court failed to discharge their inquiry duties under ICWA in this case. (See *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744 [by not asking extended family members whether child had Indian ancestry on paternal side, child protective agency failed its duty of inquiry].)

This court has "established a clear rule that requires reversal in all cases where the ICWA inquiry rules were not followed." (*In re E.V.* (2022) 80 Cal.App.5th 691, 694.) We agree with the parties the matter must be remanded for compliance with the inquiry and, if necessary, notice requirements of ICWA and California law.

DISPOSITION

The order terminating parental rights as to C.M. is conditionally reversed and the matter is remanded to the juvenile court with the following directions. Within 30 days of issuance of the remittitur, the Agency must file a report demonstrating its compliance with ICWA and section 224.2. Within 45 days of issuance of the remittitur, the juvenile court must conduct a hearing to determine whether the Agency has complied with the inquiry and notice provisions of ICWA and related California law. After the juvenile court ensures compliance with the applicable inquiry and notice requirements, it

7

shall make a finding as to whether ICWA applies to the proceedings involving C.M. (§ 224.2, subd. (i).) The juvenile court has the discretion to adjust these time periods on a showing of good cause.

If the juvenile court finds the Agency has satisfied its duties and finds ICWA does not apply to the proceedings involving C.M., then the juvenile court shall reinstate the order terminating parental rights and placing C.M. for adoption. Alternatively, if the juvenile court finds there is reason to know C.M. is an Indian child, the court shall proceed accordingly.

MOTOIKE, J.

WE CONCUR:

GOETHALS, ACTING P. J.

SANCHEZ, J.